UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEEANN RABEL,<br><br>     Plaintiff,<br><br>  v.<br><br>UNIVERSITY OF WASHINGTON MEDICAL CENTER,<br><br>     Defendant. | CASE NO. C23-0083JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Defendant the University of Washington Medical Center's ("UWMC") motion for a protective order. (Mot. (Dkt. # 16); Reply (Dkt. # 22).) Plaintiff Leeann Rabel opposes the motion. (Resp. (Dkt. # 19).) The court has considered the motion, the parties' submissions, the relevant portions of the record, and

//

//

ORDER - 1

the governing law.  Being fully advised,[1] the court GRANTS in part and DENIES in part UWMC's motion for a protective order.

## II.     BACKGROUND

This case arises from Ms. Rabel's termination from her employment as a certified registered nurse anesthetist ("CRNA") at UWMC's Montlake Campus after UWMC denied her request for a medical exemption from its COVID-19 vaccination requirement. (*See generally* Compl. (Dkt. # 1).)

On August 9, 2021, Washington State Governor Jay Inslee issued Proclamation 21-14 (with amendments, the "Proclamation"), which required employees of Washington State agencies, including UWMC, either to be fully vaccinated against COVID-19 or obtain an exemption from the vaccination requirement by October 18, 2021. (*Id.* ¶¶ 35-40); *see* Proclamation 21-14.2, available at https://perma.cc/6NEC-FSAT (last visited January 17, 2024).  Although Ms. Rabel had a "long-established medical accommodation exempting her from any vaccination while working at UWMC," UWMC required her to submit a new request for a medical exemption from the Proclamation's COVID-19 vaccination mandate. (Compl. ¶¶ 8, 14, 39-40.)  Ms. Rabel asserts that after she submitted a timely request for a medical exemption, UWMC demanded that she provide additional information, refused to grant her an extension of the deadline for submitting additional paperwork, and ultimately denied her request. (*Id.* ¶¶ 15-24.)

---

[1] Neither party has requested oral argument (*see* Mot. at 1; Resp. at 1) and the court deems oral argument unnecessary to its consideration of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1  UWMC terminated Ms. Rabel's employment for failure to comply with the vaccination
2  requirement on October 18, 2021.  (*Id.* ¶ 25.)  Ms. Rabel also alleges that her coworkers
3  and supervisors subjected her to harassment on the basis of to her inability to be
4  vaccinated, that she reported this harassment, and that UWMC requested additional
5  information and denied her medical exemption in retaliation for reporting the harassment.
6  (*Id.* ¶¶ 16, 20-21.)
7         Ms. Rabel filed this lawsuit on January 18, 2023.  (*Id.* at 1.)  She asserts claims
8  against UWMC for violations of the Americans with Disabilities Act and the Washington
9  Law Against Discrimination; deprivation of privacy in violation of the Washington State
10 Constitution; "Deprivation of Life, Liberty, or Property" in violation of the Washington
11 State Constitution and the United States Constitution; and "Right To Be Free From
12 Arbitrary And Capricious Behavior."  (*Id.* ¶¶ 63-78.)
13        On July 13, 2023, Ms. Rabel served her first set of interrogatories and requests for
14 production of documents on UWMC.  (*See* 11/20/23 O'Connell Decl. (Dkt. # 17) ¶ 3.)
15 UWMC served objections to these requests on August 14, 2023.  (*Id.* ¶ 6.)  Instead of
16 meeting and conferring regarding UWMC's objections, Ms. Rabel served an amended
17 first set of interrogatories and requests for production on October 19, 2023 ("Amended
18 Requests").  (*Id.* ¶ 7; *see id.* ¶ 8, Ex. F (redlined document showing differences between
19 the original requests and the Amended Requests ("Redlined Amended Requests").)
20 According to UWMC, the Amended Requests improperly (1) included an overbroad
21 definition of "UWMC" that could require it to provide information about employees of
22 other state agencies; (2) sought information related to religious exemptions from

ORDER - 3

COVID-19 that UWMC contends is irrelevant to this case; and (3) exceeded Federal Rule of Civil Procedure 33's 25-interrogatory limit by propounding interrogatories that contain multiple discrete subparts. (*See* Mot. at 1-2 (citing Fed. R. Civ. P 33(a)(1)).)

The parties were unable to coordinate an opportunity to meet and confer about the Amended Requests for several weeks. (*See* 11/20/23 O'Connell Decl. ¶¶ 10-11; *id.* ¶ 10, Ex. F; Arnold Decl. (Dkt. # 21) ¶¶ 2-3.) Therefore, concerned that its deadline to respond to the Amended Requests was quickly approaching, UWMC filed this motion for a protective order on November 20, 2023. (Mot.; 11/20/23 O'Connell Decl. ¶¶ 10-11.)

The parties met and conferred about UWMC's motion on November 28, 2023. (Arnold Decl. ¶ 4.) Shortly thereafter, UWMC extended the noting date of its motion by three weeks, in part to allow the parties time to attempt to resolve their dispute. (*See* 11/30/23 Not. (Dkt. # 18); 12/22/23 O'Connell Decl. (Dkt. # 23) ¶ 3, Ex. A, at 5-6 (emails regarding re-noting the motion).)

On December 13, 2023, Ms. Rabel served a second amended first set of interrogatories and requests for production ("Second Amended Requests"). (*See* Arnold Decl. ¶ 5; 12/22/23 O'Connell Decl. ¶ 4, Ex. B (redlined document showing changes between the Amended Requests and the Second Amended Requests ("Redlined Second Amended Requests")).) The parties did not have an opportunity to meet and confer regarding Ms. Rabel's Second Amended Requests before the deadlines for Ms. Rabel to respond to UWMC's motion and for UWMC to file its reply expired. (Arnold Decl. ¶ 7; 12/22/23 O'Connell Decl. ¶ 3.)

## III. ANALYSIS

Ms. Rabel argues that the court should not consider UWMC's motion because UWMC has not served objections to, and has not met and conferred about, the Second Amended Requests. (Resp. at 6-9.) Although the court is troubled by the parties' repeated inability to coordinate meet-and-confer conferences, it nevertheless exercises its discretion, in the interest of expediently resolving the parties' dispute, to decide those portions of the motion that are ripe for decision. *See* Fed. R. Civ. P. 1 (directing courts to construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding").)

Because Ms. Rabel amended her interrogatories after UWMC filed its motion, the court addresses the issues that UWMC asserts persist in the Second Amended Requests. These are: (1) whether UWMC must produce information relating to non-medical exemptions from the vaccination requirement; (2) whether Ms. Rabel's definitions of "UWMC" and "Employee" are overly broad; (3) whether the number of interrogatories, including discrete subparts, still exceeds the Rule 33(a)(1) limit; and (4) whether UWMC must produce information relating to adverse reactions from COVID-19 vaccines reported by patients. (*See* Reply at 4, 7.) Below, the court states the governing legal standard and then considers each of the matters in dispute.

**A.     Legal Standard**

The scope of discovery in a civil matter is broad, but not unlimited. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information is that which is "reasonably calculated to lead to the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). The court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

The court is empowered to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" resulting from discovery. Fed. R. Civ. P. 26(c)(1). The party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

**B.  Information About Non-Medical Exemptions**

UWMC objects to Ms. Rabel's requests for information related to non-medical exemptions to the Proclamation's COVID-19 vaccination requirement as irrelevant to the needs of this case, which is based solely on UWMC's denial of a medical exemption. (*See* Mot. at 7; Reply at 7. *See generally* Compl.)  Although UWMC does not identify the specific discovery requests at issue in its briefing (*see generally* Mot.; Resp.), the court understands that this objection applies to Interrogatories Nos. 5, 8, and 16, each of

which asks UWMC to provide information relating to both medical and religious exemptions.  (*See* Redlined Second Amended Requests at 6-7, 10.)  Ms. Rabel does not address UWMC's objection to providing information about non-medical exemptions in its response, and the court's review of Ms. Rabel's complaint supports the view that information about non-medical exemptions is irrelevant and disproportionate to the needs of this case.  (*See generally* Resp.; Compl.  *See also* Resp. at 2 (summarizing the facts Ms. Rabel intends to prove at trial).)  Accordingly, the court GRANTS UWMC's motion for a protective order with respect to the production of information and documents relating to non-medical exemptions to UWMC's COVID-19 vaccination requirement.

B.     **"UWMC" and "Employee" Definitions**

UWMC objects to Ms. Rabel's definitions of "UWMC" and "Employee" on the ground that they are overly broad and would result in UWMC's production of information that is irrelevant and disproportionate to the needs of this case.  (*See* Mot. at 6-7; Reply at 4-5.)  It asserts that the scope of its responses should instead be limited to Ms. Rabel's place of employment, UWMC's Montlake Campus.  (Mot. at 7; Reply at 5.)  Ms. Rabel contends that she is entitled to broad discovery because the key decisions relating to her case may have been made by levels of UWMC management higher than the specific campus where she worked.  (Resp. at 5, 9-12.)  The court concludes that the appropriate scope of discovery is somewhere in between.

Ms. Rabel defines "'You,' 'your,' and 'UWMC'" as referring to:

> University of Washington Medical Center, and any parent, affiliate, sister, subsidiary, predecessor, successor, or assignee of it, and its principals, operating divisions, present or former owners, employees, servants, officers,

ORDER - 7

   directors, agents, representatives, attorneys, accountants, independent
   contractors, distributors, and any other persons or entities acting on behalf of
   or under the direction, authorization, or control of it, including any foreign
   or overseas affiliates, but does not include other agencies of the State of
   Washington.

(Redlined Second Amended Requests at 2-3.)  She defines "Employee" as referring to:

   any employee of UWMC, and any other persons or entities acting on behalf
   of or under the direction, authorization, or control of UWMC, including any
   foreign or overseas affiliates.

(*Id.* at 3.)

   The court agrees with UWMC that these definitions are overbroad.  Indeed, these definitions are far from tailored to the needs of the case as required by Rule 26(b)(1); instead, they are akin to the broad language attorneys use in settlement agreements to define the scope of a release of claims.  The court is unable to determine—and Ms. Rabel does not explain—the relevance to the needs of this case of information about such entities as "foreign or overseas affiliates" when this matter arises from UWMC's implementation of a Proclamation that applies to Washington state agencies.  It is also unclear how information about "predecessors, successors, or assignees" of UWMC is relevant.  Ms. Rabel herself acknowledges that "a State is not a corporation, and an agency has no 'affiliates' or 'parent.'"  (Resp. at 9.)  For similar reasons, Ms. Rabel's broad definition of "Employee" also reaches beyond the scope of information that is relevant and proportionate to the needs of this case.[2]

---

[2] The court observes that Ms. Rabel's definitions of "UWMC" and "Employee," read together, would require UWMC to produce information relating to the attorneys defending it in this case.  Surely this is not Ms. Rabel's intent.

ORDER - 8

1    At the same time, the court declines UWMC's invitation to limit the scope of
2 discovery to employees of UWMC's Montlake Campus. Ms. Rabel has produced
3 evidence from which the court can reasonably infer that decisions about implementing
4 the Proclamation's COVID-19 vaccination requirement, evaluating requests for medical
5 exemptions, and terminating employees who failed to comply with the vaccination
6 requirement were made by overall UWMC leadership rather than by the leadership of the
7 Montlake Campus alone. (*See, e.g.*, Rabel Decl. (Dkt. # 20) ¶ 24, Ex. G (denial of
8 medical exemption by "Medical Centers Human Resources")); *id.* ¶ 25, Exs. H-K (emails
9 regarding the vaccination requirement and Ms. Rabel's vaccination status from "UW
10 Medicine Human Resources" and from UWMC's Chief Nursing Officer, Associate
11 Medical Director, and Chief CRNA); *id.* ¶ 31, Ex. M (email to Ms. Rabel from UWMC's
12 Medical Director regarding her removal from clinical service and the suspension of her
13 clinical privileges).)

14   For these reasons, the court GRANTS in part and DENIES in part UWMC's
15 request for a protective order relating to the overbreadth of Ms. Rabel's definitions of
16 "UWMC" and "Employee." Pursuant to Rule 26(c)(1)(D), and in light of the centrality
17 of the Proclamation to this case, the court limits these definitions as follows:

18    "You," "your," and "UWMC" refer to the University of Washington Medical
     Center, including UW Medical Center - Montlake Campus and UW Medical
19    Center – Northwest Campus.

20    "Employee" refers to any "Worker" or "Health Care Provider" for UWMC,
     as defined by Proclamation 21-14.2. *See* Proclamation 21-14.2 at 8-9
21    (defining "Worker" and "Health Care Provider").

22

### C.     Number of Interrogatories

Rule 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1).  This means that the court counts "discrete subparts" within an interrogatory as separate interrogatories when determining whether a party has exceeded the 25-interrogatory limit.  *Id.*  "Although the term 'discrete subparts' [in Rule 33] does not have a precise meaning, courts generally agree that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'" *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)).  For example, "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. P. 33(a)(1) advisory committee note (1993 amendments).  However, "once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005).

In its motion, UWMC argued that Ms. Rabel's Amended Requests yielded 96 discrete subparts that should each be treated as a separate interrogatory.  (*See* Mot. at 5-6;

//

//

*see also* Redlined Amended Requests at 11-27[3] (tallying the alleged discrete subparts in the right margin).) In response, Ms. Rabel withdrew a number of her interrogatories and redrafted many others. (*See* Resp. at 12-14; *see also* Redlined Second Amended Requests at 5-11 (showing the differences between Ms. Rabel's Amended Requests and Second Amended Requests).) UWMC now asserts in reply that Ms. Rabel's Second Amended Requests include 38 interrogatories, including discrete subparts. (Reply at 5-6.) Although UWMC provides a running count of how many discrete subparts it asserts are included in Ms. Rabel's second amended interrogatories (*see* Redlined Second Amended Requests at 5-11 (tallying the alleged discrete subparts in the right margin)), it explains its reasoning behind that count only for Interrogatory Nos. 2 and 4 (*see* Reply at 6).[4] The court considers each in turn.

Interrogatory No. 2 asks:

> Please provide your internal valuation of Ms. Rabel's medical and pension benefits, as of the day before you instituted an employee COVID-19 vaccination requirement.

(Redlined Second Amended Requests at 6.) The court disagrees with UWMC's position that the requests for information about medical benefits and pension benefits constitute two discrete subparts. To the contrary, Interrogatory No. 2 asks about the

---

[3] The court cites the page number in the CM/ECF header when referring to the Redlined Amended Requests.

[4] UWMC asserts that it did not provide an "interrogatory-by-interrogatory review" of the asserted subparts because that would "vastly exceed the word limits" set by the court's local rules. (Mot. at 6; *see also* Reply at 6-7 (making the same assertion).) UWMC could, however, have moved for leave to file an overlength brief that contained enough words to explain its reasoning. *See* Local Rules W.D. Wash. LCR 7(f).

ORDER - 11

value of Ms. Rabel's benefits, and the valuations of her medical benefits and pension benefits are secondary inquiries that "relate to this common theme." *Paananen v. Cellco P'ship*, No. C08-1042RSM, 2009 WL 3327227, at *3 (W.D. Wash. Oct. 8, 2009) (concluding that inquiries about names, dates, titles, job duties, and responsibilities were all "logically subsumed" into plaintiff's request for his co-workers' employment history); *see also Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 686 (D. Nev. 1997) (observing that a request for "the value of [plaintiff's] compensation, including salary, incentive payments, bonuses, life insurance, contributions to pensions plan [and] medical insurance" was a single inquiry). Thus, Interrogatory No. 2 should be counted as one interrogatory.

Interrogatory No. 4 asks:

> Please list all work lost to UWMC due to positive diagnoses of COVID-19 after October 18, 2021 among UWMC employees, including the Identity of the employee, the date of the diagnosis, the period of quarantine or isolation, and the dates of all shifts the employee missed as a result of the infection, and state the vaccination status of the employee.

(Redlined Second Amended Requests at 6.) The Second Amended Requests define the "Identity" of a person to mean "that person's name, address, phone number, e-mail address, employer's name and position." (*Id.* at 4.) Here, the court agrees with UWMC that this interrogatory contains two discrete subparts: one that asks UWMC for information about employees who missed work due to positive diagnoses of COVID-19, and a second that asks UWMC for information about the work shifts that were missed due to COVID-19. (*See* Reply at 6.) Thus, Interrogatory No. 4 should be counted as two interrogatories.

ORDER - 12

1     UWMC has not, however, explained the basis for its contention that other
2 interrogatories contain multiple discrete subparts.  (*See generally* Mot.; Reply.)  That is,
3 it has not demonstrated "that a particular subpart of a particular interrogatory introduces a
4 separate and distinct line of inquiry from the one that precedes it, and which could fairly
5 and logically be counted as a new interrogatory against the presumptive limit."  *Homesite*
6 *Ins. Co. of the Midwest v. Howell*, No. C21-01389JHC, 2022 WL 17601176, at *3 (W.D.
7 Wash. Dec. 13, 2022).  As the party opposing discovery, UWMC bears the burden of
8 explaining its objections.  *See id.* (citing Fed. R. Civ. P. 26(b)(1) and *Bryant v. Ochoa*,
9 No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)).  The court
10 will not do the work of analyzing Ms. Rabel's interrogatories on UWMC's behalf.
11 Because UWMC has failed to meet its burden to explain its objections to Ms. Rabel's
12 interrogatories, the court DENIES UWMC's motion for a protective order relating to its
13 assertion that Ms. Rabel's interrogatories (aside from Interrogatory No. 4) contain
14 multiple discrete subparts that should be considered separate interrogatories.
15 Interrogatory No. 4 shall count as two interrogatories.  The remaining interrogatories in
16 Ms. Rabel's Second Amended Requests shall each count as one interrogatory.

**D.    Patient COVID-19 Information**

Finally, UWMC objects to producing information about its patients' adverse reactions to the COVID-19 vaccine in response to Ms. Rabel's Interrogatory No. 3 and Request for Production No. 2.  (Reply at 7.)  Interrogatory No. 3 asks UWMC to:

> list all adverse reactions reported by patients to UWMC and its affiliates from COVID-19 vaccination from 2020 to present, including the patient's Identity, the date of the vaccination, the date(s) of the reported adverse reaction(s),

and the specific adverse reaction(s) reported or known, up to and including death.

(Redlined Second Amended Requests at 6.)  Request for Production No. 2 seeks:

all documents related to, reporting on, or identifying in any way adverse reactions reported by patients to UWMC from the COVID-19 vaccinations, including any reactions that resulted in death, identifying the date of vaccination, the date of the reported adverse reaction, and the specific adverse reaction reported.

(*Id.* at 11.)  Although Ms. Rabel included requests for substantially similar patient information in her Amended Requests (*see* Redlined Amended Requests at 13, 28), UWMC did not raise its objection to providing this information in its motion for a protective order (*see generally* Mot.).  Instead, UWMC addressed these requests for the first time in its reply.  (*See* Reply at 7.)  Because arguments raised on reply are typically waived, the court need not, and does not, consider UWMC's request for a protective order relating to Interrogatory No. 3 and Request for Production No. 2.  *See Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012); *see also Bridgham-Morrison v. Nat'l Gen. Assurance Co.*, C15-0927RAJ, 2015 WL 12712762, at *2 (W.D. Wash. Nov. 16, 2015) ("For obvious reasons, new arguments and evidence presented for the first time on Reply . . . are generally waived or ignored.").[5]

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part UWMC's motion for a protective order (Dkt. # 16).  Specifically:

---

[5] The court observes, however, that the relevance of UWMC's patients' reports of adverse reactions from COVID-19 vaccinations to the needs of this case is far from clear.

ORDER - 14

1.      The court GRANTS UWMC's motion for a protective order with respect to the production of information and documents relating to non-medical exemptions to UWMC's COVID-19 vaccination requirement.

2.      The court GRANTS in part and DENIES in part UWMC's request for a protective order relating to the overbreadth of Ms. Rabel's definitions of "UWMC" and "Employee."  The court limits these definitions as follows:

> "You," "your," and "UWMC" refer to the University of Washington Medical Center, including UW Medical Center - Montlake Campus and UW Medical Center – Northwest Campus.
>
> "Employee" refers to any "Worker" or "Health Care Provider" for UWMC, as defined by Proclamation 21-14.2.  *See* Proclamation 21-14.2 at 8-9 (defining "Worker" and "Health Care Provider").

3.      The court DENIES UWMC's motion for a protective order relating to its assertion that Ms. Rabel's interrogatories (aside from Interrogatory No. 4) contain multiple discrete subparts that should count as separate interrogatories.  Interrogatory No. 4 shall count as two interrogatories.  The remaining interrogatories shall each count as one interrogatory.

4.      The parties are ORDERED to ensure that they satisfy the meet-and-confer requirement before they seek the court's assistance on any future discovery dispute.  *See* Fed. R. Civ. P. 26(c)(1) (requiring the party filing a motion for protective order to "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action"); Local Rules W.D. Wash. LCR 26(c)(1) (providing that a "good faith effort to confer requires a meeting or a telephone conference").  The parties are further ORDERED to review the

1 | court's procedures for the resolution of discovery disputes.  (*See* Sched. Order (Dkt. # 14)

2 | at 2 (directing the parties to request a conference with the court before moving for an

3 | order relating to discovery).)  Failure to follow these procedures in the future before

4 | filing a motion relating to discovery may result in the court striking the motion.

5 |     Dated this 18th day of January, 2024.

*[signature]*

JAMES L. ROBART
United States District Judge